**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| TANYA PETEETE, | : | |
| | : | CIVIL ACTION NO. 09-1220 (MLC) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| ASBURY PARK POLICE | : | |
| DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COOPER, District Judge**

The plaintiff brought this action alleging, <u>inter alia</u>, various civil rights violations under the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2; 42 U.S.C. §§ ("Section") 1981, 1983, 1985, and 1986; and the New Jersey Law Against Discrimination ("NJLAD"). (Dkt. entry no. 30, Am. Compl.) The plaintiff further alleges causes of action for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. (<u>Id.</u>)

Defendants County of Monmouth (the "County"), Monmouth County Sheriff's Office ("MCSO"), Alex Torres ("Torres"), and Lorenzo Pettway ("Pettway") (collectively, "Moving Defendants") move for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 54, Mot. for Summ. J.)[1]

---

[1] Moving Defendants refer to "the separately filed Statement of Material Facts Not in Dispute" in the brief filed in support of the current motion. (Dkt. entry no. 54, Moving Defs.' Br. at 2.) The Court presumes this to indicate the Statement of

The plaintiff opposes the motion.  (Docket entry no. 60, Pl. Br.)
The Court, for the reasons stated herein, will grant the motion.

**BACKGROUND**

**I.   Plaintiff's Arrest**

The plaintiff identifies herself as "an African-American
resident of New Jersey."  (Am. Compl. at 2.)  The plaintiff and
her immediate family arrived at their residence on September 19,
2007, where a drug raid of the residence by members of the Asbury
Park Police Department ("APPD") and MCSO was in progress.  (Id.
at 4.)  Members of the APPD, including Pettway, arrested the
plaintiff and searched her pocketbook.  (Id.)[2]  Although no drugs
were found on the plaintiff's person or in her bedroom, the

---

Material Facts Not in Dispute filed in support of their previous
motion for summary judgment (dkt. entry no. 37, Mot. for Summ. J.
& Moving Defs.' Stmt. of Material Facts), which the Court denied
without prejudice in light of Moving Defendants' failure to
address the doctrine of qualified immunity.  (Dkt. entry no. 50,
3-23-10 Order.)  We note that Moving Defendants' reference to the
previously filed document, without reference to a docket number
or filing date, resulted in the plaintiff's inability to locate
the same, and likely fails to comply with Local Civil Rule
56.1(a).  However, because the plaintiff filed a response to
Moving Defendants' "Statement of Facts" recited in the brief in
support of the current motion, and the plaintiff previously
responded to Moving Defendants' Statement of Material Facts (dkt.
entry no. 45, Pl. Resp.), we will not deny the current motion
based on Moving Defendants' failure to comply with Local Civil
Rule 56.1(a).

[2] Defendants aver that Torres was not involved with the
plaintiff's arrest and that his participation in the matter was
limited to investigatory undercover purchases of narcotics.
(Moving Defs.' Stmt. of Undisputed Facts at ¶ 4; id., Ex. C, 11-
30-09 Letter stating Torres was not involved in the arrests;
accord Am. Compl. at 6.)

plaintiff was charged with possession and distribution of a controlled dangerous substance ("CDS") based on a constructive theory of possession.  (Id.)  When the plaintiff expressed concern about who would care for her children, an officer allegedly told her, "Hopefully you are never coming home. . . . Maybe they are better off."  (Id. at 5.)

The plaintiff remained at the Monmouth County jail for approximately six months.  (Id.)  She was eventually released when she pleaded guilty to an unrelated aggravated assault charge and the CDS charges were dropped.  (Id.)

## II.  Monmouth County Narcotic Strike Force/Gang Task Force

Pettway, a patrolman with the APPD, and Torres, a Sheriff's Officer employed by the MCSO, were both members of the Monmouth Country Narcotic Strike Force/Gang Task Force ("Task Force"), which was organized under the direction of the Monmouth Country Prosecutor's Office ("MCPO").  (Moving Defs.' Stmt. of Undisputed Facts at ¶¶ 1-5.)[3]  Both Pettway and Torres are among the individuals referred to by the plaintiff as the "Police Defendants" in the Amended Complaint.  (Am. Compl. at 2.)

Ebony Peteete, a relative of the plaintiff's husband, was the subject of a Task Force investigation.  (Moving Defs.' Stmt. of Undisputed Facts at ¶ 6.)  According to Moving Defendants, the

---

[3] The Monmouth County Prosecutor's Office was dismissed from this action in a Memorandum Opinion and Order & Judgment dated March 22, 2010.  (Dkt. entry nos. 48 & 49.)

investigation revealed that the plaintiff's residence was being used as a base of operations to transact street level narcotics sales.  (Id.)[4]  A raid of the residence following a controlled purchase of heroin from Ebony Peteete resulted in the discovery of glassine bags of heroin in the kitchen, living room, an upstairs bedroom, and on several persons in the house.  (Moving Defs.' Stmt. of Undisputed Facts, Ex. E, Arrest Report at 2-3.) No CDS or other contraband were found in the first-floor bedroom the plaintiff shared with her husband.  (Dkt. entry no. 60, Pl. Resp. to Moving Defs.' Stmt. of Undisputed Facts at 2.)

The plaintiff and her family arrived at the residence as the police were leaving the scene.  (Arrest Report at 4.)  The task force had an active arrest warrant for one of the passengers in the plaintiff's vehicle for narcotics distribution.  (Id.)  The plaintiff and her husband were placed under arrest by "Pettway and another officer" after verifying to the officers that they resided at the location where the raid had just occurred.  (Dkt. entry no. 45, Pl. Resp. at ¶ 9; Arrest Report at 4.)

**III. Claims Pending Against Moving Defendants**

The Amended Complaint sets forth the following causes of action against Moving Defendants, either expressly, generically

---

[4] The plaintiff disputes that the residence was used as a "base of operations."  (Dkt. entry no. 45, Pl. Resp. at ¶ 6.)

4

as "Defendants," or to the extent Pettway and Torres are among

the "Police Defendants":

| | |
|---|---|
| Count One: | Violation of the plaintiff's civil rights under the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, by Defendants |
| Count Two: | Violation of Section 1983 by the Police Defendants for violating the plaintiff's Fourth, Thirteenth, and Fourteenth Amendment rights |
| Count Three: | Violation of Section 1981 by the Police Defendants and the County, in that the "acts of the Defendants were motivated by racial animosity and the desire to injure, oppress, and intimidate the Plaintiff because of her race" |
| Count Four: | Violation of Section 1985 by the Police Defendants and the County for conspiring to violate the plaintiff's civil rights based on her race |
| Count Five: | Violation of Section 1986 by the Police Defendants for failing to prevent the violation of the plaintiff's civil rights |
| Count Seven: | Violation of the NJLAD by the Defendants |
| Count Eight: | False Imprisonment by the Defendants |
| Count Nine: | Intentional Infliction of Emotional Distress by the Defendants |
| Count Ten: | Negligent Infliction of Emotional Distress by the Defendants |
| Count Eleven: | Negligent Infliction of Emotional Distress by the "Defendants" [indistinguishable from Count Ten] |

(Am. Compl. at 7-12.)

**DISCUSSION**

## I.   Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

## II.   Count Two - Section 1983 Claim

Count Two, alleging constitutional violations under Section 1983, is asserted against the "Police Defendants" only.  (Am. Compl. at 7-8.)  Therefore, the Court need only consider this claim in the context of the current motion insofar as it concerns Pettway and Torres.

The only allegation against Torres is that he worked with a confidential informant in connection with the undercover investigation of Ebony Peteete.  (Am. Compl. at 6.)  This allegation does not support a finding that Torres had personal involvement in the plaintiff's arrest on September 19, 2007.

6

Because "[a] defendant in a civil rights action must have
personal involvement in the alleged wrongs," summary judgment in
favor of Torres on the plaintiff's Section 1983 claim would be
appropriate.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.
1988).  Even if this were not the case, for the reasons that
follow, we conclude that both moving "Police Defendants" are
entitled to summary judgment on this claim.

### A.   Eleventh Amendment Immunity - Official Capacity Claim

The Eleventh Amendment provides that "[t]he Judicial power
of the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State."  U.S. Const. amend. XI.
Sovereign immunity is not merely a defense to liability, but
provides an immunity from suit.  Fed. Mar. Comm'n v. S.C. State
Ports Auth., 535 U.S. 743, 766 (2002).  Thus, "Eleventh Amendment
immunity" prohibits citizens from bringing suits against any of
the states in federal court.  Edelman v. Jordan, 415 U.S. 651,
662-63 (1974).

A suit is barred by Eleventh Amendment immunity "even though
the state is not named a party to the action, as long as the
state is the real party in interest."  Carter v. City of Phila.,
181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis
omitted).  This immunity therefore "extends to agencies,

departments and officials of the state when the state is the real, substantial party in interest." Landi v. Bor. of Seaside Park, No. 07-5319, 2009 WL 606141, at *3 (D.N.J. Mar. 9, 2009). In determining whether the named party is an arm of the state such that the state is a real party in interest, courts are to consider whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989).

Moving Defendants contend that Torres and Pettway, "as investigators/officers of the . . . Task Force established within the [MCPO] . . . were acting as agents of the state, and as such, are entitled to sovereign immunity." (Moving Defs.' Br. at 7.) When county prosecutors and their subordinates perform law enforcement and prosecutorial functions, they act as agents of the State, and the State must indemnify a judgment arising from their conduct. Wright v. State, 778 A.2d 443, 461-62, 464 (N.J. 2001). The Court has already found the MCPO immune from suit under the Eleventh Amendment. (Dkt. entry no. 49, 3-22-10 Order & J.) Because Torres and Pettway were working in a law enforcement investigation under the direction of the MCPO, they too are immune from suit in their official capacities under the

8

Eleventh Amendment.  See Landi, 2009 WL 606141, at *4-5; accord
Slinger v. New Jersey, 366 Fed.Appx. 357, 360 (3d Cir. 2010)
(stating that immunity of state agency extends to employees of
that agency sued in their official capacities); Capogrosso v.
Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009) (same).  (See
Moving Defs.' Br., Exs. A-B (Letters assigning Torres to Task
Force under MCPO); Ex. D (Letter assigning Pettway to Task Force
under MCPO).)

   **B.   Qualified Immunity - Individual Capacity Claims**

   Moving Defendants urge the Court to enter judgment in favor
of Torres and Pettway on the basis of qualified immunity for all
federal claims against them.  (Moving Defs.' Br. at 15.)  "The
doctrine of qualified immunity protects government officials from
liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known."  Pearson v.
Callahan, 129 S.Ct. 808, 815 (2009) (citation omitted).  It is
"an immunity from suit rather than a mere defense to liability."
Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted).

   Application of the doctrine involves a two-step analysis.  A
court must decide whether (1) the facts that a plaintiff has
shown make out a violation of a constitutional right, and (2) the
right at issue was "clearly established" at the time of the
defendant's alleged misconduct.  Pearson, 129 S.Ct. at 815-16.

9

The order in which the Court addresses each step rests within the discretion of the Court "in light of the circumstances of the particular case at hand."  Id. at 818.

Government officials thus "are entitled to qualified immunity only if the Court can conclude, based on the undisputed facts in the record, that [the officials] reasonably, although perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation."  Mantz v. Chain, 239 F.Supp.2d 486, 496 (D.N.J. 2002).  The burden of proving entitlement to qualified immunity rests with the defendant.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

In Section 1983 cases involving alleged violations of the Fourth Amendment, the qualified immunity inquiry considers "whether a reasonable officer would have believe that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession."  Palma v. Atl. Cnty., 53 F.Supp.2d 743, 769 (D.N.J. 1999) (citation and quotation omitted).  Police officers who "reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity" for claims of Fourth Amendment violations, including unlawful arrest and false imprisonment.  Id.  Conversely, "[a] mistake is

not reasonable when it amounts to the violation of a 'clearly established' right, such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Williams v. Atl. City Dep't of Police, No. 08-4900, 2010 WL 2265215, at *4 (D.N.J. June 2, 2010) (quoting Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  To state a claim for unlawful arrest under Section 1983 and the Fourth Amendment, a plaintiff must assert that she was arrested by a state actor without probable cause.  Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997).  Probable cause to arrest without a warrant "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person being arrested."  Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

The Fourth Amendment generally requires "individualized suspicion of wrongdoing" to establish probable cause.  Chandler

11

v. Miller, 520 U.S. 305, 313 (1997); see also Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). However, probable cause to arrest on a constructive theory of possession may exist in cases where a search of a residence turns up contraband in such quantities to suggest a "routine business of drug sales in the apartment," when no individual at the residence admits ownership of the contraband.  See Williams, 2010 WL 2265215, at *4-6.

Plaintiff does not contest any of the facts as presented in the Arrest Report prepared by Pettway detailing the drug raid at the plaintiff's residence.  That report states that the Task Force effected a controlled buy of narcotics from Ebony Peteete at the residence; placed persons present at the residence and its backyard area under arrest; found suspected CDS and/or hypodermic needles on several of these persons; and collected evidence from the residence.  (Arrest Report at 2-4.)  The report states that the following evidence was "located on top of the freezer in the kitchen area":

1.   Sixteen empty hypodermic needles with caps.
2.   One small black leather wallet containing eight decks of suspected CDS Heroin & assorted personal effects.
3.   Fourteen individually wrapped glassine decks of suspected CDS Heroin in magazine paper . . . stamped "Games" & "Top Secret" in red ink.

12

4.   Five bundles each containing ten decks of
     suspected CDS Heroin, totaling fifty.  Each deck
     wrapped in glassine bags stamped with games in red
     ink.
5.   One magazine paper package containing two bundles
     each containing ten decks of suspected CDS Heroin
     wrapped in glassine packets stamped "Top Secret"
     in red ink.
6.   Black leather wallet containing assorted personal
     effects & $379.00 in U.S. Currency.
7.   Thirty-two bills of assorted U.S. Currency
     totaling $700.00. . . . Buy money used by the
     undercover police officer to purchase CDS.
8.   Brown leather pocket book containing assorted
     personal effects.
9.   Assorted personal paperwork & criminal complaints
     in the name of Eboney Peteete and Ricardo Wesley.
10.  One black Nextel Boost cellular telephone.
11.  Standard house key with a purple key ring labeled
     #23 and a Shop Rite Plus discount card.
12.  Pieces of assorted broken costume jewelry.
13.  $995.00 in U.S. currency.

(Id. at 3.)  The search also turned up nineteen glassine packets
of suspected CDS Heroin in the living room, one glassine packet
of suspected CDS Heroin in an upstairs bedroom where the elderly
owner or renter of the house was sleeping, and a gun in the
attic.  (Id. at 3-4.)

     The plaintiff was placed under arrest after confirming that
she lived at the residence where the police officers had reason
to believe, after an ongoing investigation, that the residence
was a base for narcotics distribution, and significant amounts of
CDS had been found only moments before in common areas of the
residence.  We find that under these circumstances--particularly
the large number of glassine packets of suspected heroin in plain

view on top of the freezer in the kitchen and in the living room
--a reasonable officer could have believed that probable cause
existed to arrest all residents, including the plaintiff, on a
theory of constructive possession.  See Ginter v. Skahill, 298
Fed.Appx. 161, 164 (3d Cir. 2008) (noting that even where a
suspect does not physically possess contraband, "probable cause
may still be established through constructive possession");
Williams, 2010 WL 2265215, at *5-6.  Because the arresting
officers could have reasonably, even if mistakenly, concluded on
these facts that probable cause existed, the officers are
entitled to qualified immunity because the plaintiff did not
suffer a violation of a "clearly established" right.

Insofar as the arresting officers could have believed that
the plaintiff's arrest was based on probable cause, they are also
entitled to qualified immunity for the search incident to that
arrest.  See United States v. Goode, 309 Fed.Appx. 651, 653 (3d
Cir. 2009).  We conclude that Pettway and Torres are thus
entitled to summary judgment on the plaintiff's Section 1983
claim as to the alleged Fourth Amendment violations.

The plaintiff's Section 1983 claim further alleges that her
arrest resulted in various Fourteenth Amendment violations,
including deprivation of her right to privacy, freedom of travel,
due process, and equal protection of the laws, as well a
violation of the Thirteenth Amendment's guarantee against

14

involuntary servitude.  (Am. Compl. at 8.)  However, the
plaintiff does not cite to any authority in support of these
aspects of her Section 1983 claim and does not address them at
all in her brief opposing summary judgment.  Because these
allegations are all apparently predicated on her arrest and
subsequent detention, the Court, having found Pettway to be
entitled to summary judgment as to the alleged Fourth Amendment
violations, will also grant summary judgment in favor of Pettway
on the remainder of the plaintiff's Section 1983 claim.

## III. Count Three - Section 1981

Section 1981 requires that all persons in the United States
have "the full and equal benefit of all laws and proceedings for
the security of persons and property as is enjoyed by white
citizens, and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to
no other."  42 U.S.C. § 1981(a).  The plaintiff alleges that
"[t]he acts of the Defendants were motivated by racial animosity
and by the desire to injure, oppress, and intimidate the
Plaintiff because of her race."  (Am. Compl. at 9.)  The
plaintiff indicates that she is "claiming Black on Black"
discrimination as against Pettway.  (Dkt. entry no. 44, Pl. Br.
at 3 n.3.)

Section 1981 provides a private cause of action for
intentional discrimination only.  Gen. Bldg. Contractors Assoc.

15

v. Pennsylvania, 458 U.S. 375, 391 (1982).  To state a claim under Section 1981, the plaintiff must show "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981."  Pryor v. Nat'l Coll. Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (citation and quotation omitted).

The plaintiff has not alleged, much less proven, facts supporting her contention that her arrest was motivated by racial animus or an intent to discriminate on the basis of her race. The plaintiff's sole suggestion that her arrest was motivated by racial discrimination is her allegation that "[w]hen she expressed concern about who would take care of her children, [Pettway] said 'Hopefully you are never coming home. . . . Maybe they are better off.'"  (Am. Compl. at 5; Pl. Br. at 3.) Pettway's alleged statement does not evince an intent to discriminate on the basis of the plaintiff's race by any of the Defendants, and moreover, the statement is race-neutral.  See Schultz v. Wilson, 304 Fed.Appx. 116, 119-20 (3d Cir. 2008). Thus, Moving Defendants are entitled to summary judgment on the plaintiff's Section 1981 claim.

IV.  **Count Four - Section 1985**

To prevail on a claim alleging conspiracy to interfere with civil rights, in violation of 42 U.S.C. § 1985, a plaintiff must

prove the following elements:  (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) an act in furtherance of the conspiracy, (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.  Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006); 42 U.S.C. § 1985(3).

The Amended Complaint alleges that the "Police Defendants" (here, including Pettway and Torres) and the County engaged in "a conspiracy to violate the civil rights of Plaintiff based on her race." (Am. Compl. at 9.)  However, the record contains no facts supporting the conspiracy charge, and the Court has determined that Moving Defendants are entitled to qualified immunity for her arrest.  Accordingly, summary judgment will be entered in favor of Torres, Pettway, and the County on the plaintiff's Section 1985 claim.

## V.   Count Five - Section 1986

Section 1986 provides that a person may be liable for neglecting to prevent a Section 1985 conspiracy despite having the power to do so.  42 U.S.C. § 1986.  The plaintiff alleges that the "Police Defendants had knowledge of the discrimination/violation of constitutional rights perpetrated on Plaintiff and/or other minorities, including Plaintiff but

17

neglected to prevent said wrongful and illegal acts when they had the power to do so."  (Am. Compl. at 9.)

A Section 1986 claim is dependent on establishing a violation of 1985, and where a plaintiff fails to do the former, a Section 1986 claim cannot exist.  <u>Bieros v. Nicola</u>, 839 F.Supp. 332, 336 (E.D. Pa. 1993).  The Court will grant summary judgment to Torres and Pettway on this claim.

## VI.  Count One - New Jersey Constitution and New Jersey Civil Rights Act

Count One asserts a "civil rights action" under the New Jersey Civil Rights Act and New Jersey Constitution.  (Am. Compl. at 7.)  The New Jersey Civil Rights Act provides a private cause of action to redress, <u>inter alia</u>, violations of the New Jersey Constitution.  N.J.S.A. § 10:6-2(c).

The plaintiff invokes three provisions of Article I of the New Jersey Constitution in Count One:

1. All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty. . . .
   . . .
5. No person shall be denied the enjoyment of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry, or national origin.
   . . .
7. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon

18

> probable cause, supported by oath or affirmation,
> and particularly describing the place to be
> searched and the papers and things to be seized.

N.J. Const. of 1947, Art. I, ¶¶ 1, 5, & 7.  The plaintiff states
in Count One that the "illegal, unconstitutional and
discriminatory acts of the Defendants constituted acts of a de
facto policy to discriminate, use unlawful force, falsely arrest
and detain, and illegally search Plaintiff.  The actions of the
Defendants . . . also represent a de facto policy to deny
Plaintiff her rights to travel, equal protection, contract and
privacy."  (Am. Compl. at 7.)

     The Court, as discussed above, has determined that Moving
Defendants are entitled to judgment in their favor with respect
to the plaintiff's arrest because the arresting officers could
reasonably believe probable cause existed, and therefore entitled
to judgment in their favor on all derivative claims as well.  The
plaintiff does not distinguish Count One from Count Two in any
way.  Thus, as with Count Two, we will grant the motion as to
Count One insofar as it asserts an illegal arrest, search, and
subsequent deprivation of a liberty interest without due process
under state law pursuant to Article I, paragraphs 1 and 7 of the
New Jersey Constitution.  See Awkward v. Willingboro Police
Dep't, No. 07-5083, 2010 WL 3906785, at *5 n.7 (D.N.J. Sept. 30,
2010) ("Because the analysis of claims under state constitutional
law is similar to the analysis under the Fourth Amendment, no

19

separate analysis will be undertaken for plaintiffs [sic] claims arising under the New Jersey Constitution.")  Because the record contains no evidence of racial discrimination beyond the plaintiff's bare allegations, the Court will grant the motion as to Count One insofar as it asserts a race-based claim under Article I, paragraph 5 of the New Jersey Constitution.

## VII. State Law Causes of Action

Plaintiff asserts a number of state law causes of action against Moving Defendants, including violation of the NJLAD, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (Am. Compl. at 10-12.)

### A.  Count Seven - NJLAD Claim

The Court has already determined that the record contains no evidence of racial animus or race-based discrimination on the part of Moving Defendants. Accordingly, judgment will be entered in favor of Moving Defendants on Count Seven, the plaintiff's NJLAD claim.

### B.  Count Eight, Count Nine, Count Ten, and Count Eleven - Tort Claims Barred by New Jersey Tort Claims Act

Moving Defendants contend that they are entitled to summary judgment on the remaining state law tort claims on the basis of the plaintiff's failure to file a notice of claim, as required by the New Jersey Tort Claims Act.  (Moving Defs.' Br. at 20.)  The applicable provisions require that a plaintiff must provide

notice of a tort claim to the public entity or public employee
she intends to sue within ninety days of accrual of the cause of
action.  N.J.S.A. § 59:8-3 and -8.[5]  Such plaintiff is "forever
barred" from recovering against a public employee or public
entity for failure to comply with this notice provision, or where
two years have elapsed since the accrual of the claim.  N.J.S.A.
§ 59:8-8(a)-(b).  The notice of claim requirement applies to
state law tort claims brought in federal court where a plaintiff
also alleges federal and state constitutional violations.  Cnty.
Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 174-75 (3d Cir.
2006).

        The plaintiff does not dispute Moving Defendants' contention
that she has never filed the tort claims notice required by
N.J.S.A. § 59:8-8.  She cites no authority for her argument that
she should be excused from the notice of claim provision because
"the instant action was filed in Federal Court" in lieu of
seeking permission in New Jersey Superior Court to file a late
notice of claim pursuant to the procedure outlined in N.J.S.A. §
59:8-9.  (Pl. Br. at 7.)  Bringing a state law tort claim against
a public entity or public employee in federal court does not
satisfy this statutory notice requirement.  Cnty. Concrete Corp.,

---

        [5] While a state court, in certain circumstances and upon a
motion, may extend the ninety-day deadline for filing pre-suit
notification to as long as one year following accrual of the
action, there is no indication that the plaintiff made any such
application here.  N.J.S.A. § 59:8-9.

442 F.3d at 174-75.  We decline to consider the plaintiff's arguments that the notice requirement should be excused "in the interests of justice" or due to "extraordinary circumstances," finding no procedural basis for granting such review or relief. Cf. N.J.S.A. § 59:8-9 (stating that application for permission to file late notice of claim is to be made to the Superior Court, supported by affidavits showing "sufficient reasons constituting extraordinary circumstances for his failure to file a claim").

The plaintiff's claims for false imprisonment (Count Eight), intentional infliction of emotional distress (Count Nine), and negligent infliction of emotional distress (Count Ten and Count Eleven) therefore fail as a matter of law.  The Court will enter summary judgment in favor of Moving Defendants on these claims.

CONCLUSION

The Court, for the reasons stated supra, will grant the motion and enter summary judgment in favor of Moving Defendants. The Court will issue an appropriate order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    December 13, 2010

22