**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TANYA PETEETE, | : | |
| | : | CIVIL ACTION NO. 09-1220 (MLC) |
|     Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
|     v. | : | |
| | : | |
| ASBURY PARK POLICE | : | |
| DEPARTMENT, et al., | : | |
| | : | |
|     Defendants. | : | |
| | : | |

**COOPER, District Judge**

The plaintiff brought this action alleging, <u>inter</u> <u>alia</u>, various civil rights violations under the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2; 42 U.S.C. §§ ("Sections") 1981, 1983, 1985, and 1986; and the New Jersey Law Against Discrimination ("NJLAD").  (Dkt. entry no. 30, Am. Compl.)  The plaintiff further alleges causes of action for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. (<u>Id.</u>)  The Amended Complaint names the following defendants: City of Asbury Park; Asbury Park Police Department ("APPD"); Chief Mark Kinmon, Sergeant Jeff White ("White"), Officer Lorenzo Pettway ("Pettway"), Officer Nicholas Townsend ("Townsend"), and Officer Daniel Kowsaluk ("Kowsaluk"), all of the Asbury Park Police Department; the County of Monmouth; Monmouth County Prosecutor's Office ("MCPO"); Monmouth County Sheriff's Office ("MCSO"); Sheriff's Officer Alex Torres ("Torres") of the MCSO;

and Detective Scott Samis ("Samis") of the MCPO.  (Am. Compl. at
2-4.)  The Court previously dismissed the Amended Complaint
insofar as it is asserted against the MCPO, finding that the MCPO
was immune from liability under the Eleventh Amendment.
(See dkt. entry no. 48, 3-22-10 Mem. Op.; dkt. entry no. 49, 3-
22-10 Order & J.)

Samis now moves to dismiss the Amended Complaint insofar as
asserted against him, pursuant to Federal Rule of Civil Procedure
("Rule") 12(b)(1) on the basis that he, like the MCPO, is immune
from liability under the Eleventh Amendment of the United States
Constitution as to the claims asserted against him in his
official capacity.  (Dkt. entry no. 53, Mot. Dismiss & Samis Br.)
Samis also seeks dismissal on the bases that he is entitled to
qualified immunity, and because plaintiff has not stated a claim
against him in his individual capacity.  (Samis Br. at 12-22.)
The plaintiff has opposed the motion.  (Docket entry no. 58, Pl.
Br.)  The Court, for the reasons stated herein, will grant the
motion in part and deny the motion in part.[1]

---

[1] Defendants Monmouth County, MCSO, Torres, and Pettway move
in a separate motion for judgment in their favor as to the claims
asserted against them in the Amended Complaint, contending that
they are immune from liability under the Eleventh Amendment or
under the doctrine of qualified immunity.  (Dkt. entry no. 54,
Mot. for Summ. J.)  That motion is the subject of a separate
memorandum opinion.

**BACKGROUND**

The plaintiff identifies herself as "an African-American resident of New Jersey." (Am. Compl. at 2.) The plaintiff and her immediate family arrived at their residence on September 19, 2007, where a drug raid of the residence by members of the APPD and MCSO was in progress. (<u>Id.</u> at 4.) After ascertaining that the plaintiff and her husband lived at the residence, Pettway and Kowsaluk arrested the plaintiff and searched her pocketbook. (<u>Id.</u>) No drugs were found on the plaintiff's person, pocketbook, or in her bedroom. (<u>Id.</u>) The plaintiff asked the officers why she was being arrested, and one responded, "For living here." (<u>Id.</u>) When the plaintiff expressed concern about who would care for her children, an officer allegedly told her, "Hopefully you are never coming home. . . . Maybe they are better off." (<u>Id.</u> at 5.) The plaintiff was charged with possession and distribution of a controlled dangerous substance ("CDS") based on a constructive theory of possession. (<u>Id.</u> at 4.)

The plaintiff remained at the Monmouth County jail for approximately six months. (<u>Id.</u> at 5.) She was eventually released when she entered a plea of guilt to an unrelated aggravated assault charge and the CDS charges were dropped. (<u>Id.</u>) The plaintiff alleges that Samis presented false or misleading information regarding the incident to the Grand Jury, including:

3

- Referring to the plaintiff as T.P., her juvenile daughter, who was in possession of CDS at the time of the incident;
- Testifying that the plaintiff was married to her cousin;
- Testifying that CDS was found throughout the house, when in fact no CDS or contraband was found in the plaintiff's bedroom;
- Testifying that the plaintiff's husband was the owner and/or renter of the residence.
- Testifying that the plaintiff was a lookout and seller of CDS for the subject of the drug raid and investigation, allegedly based on information from a confidential informant.

(Id. at 5-6.)  The Amended Complaint alleges that Samis "was involved in the incident and is believed to be one of the supervisors during the incident," noting that Samis "is being sued as an employee of MCPO and/or [Monmouth County] and individually."  (Id. at 4.)  The Amended Complaint refers to Samis, Torres, White, Pettway, Townsend and Kowsaluk collectively as the "Police Defendants."  (Id.)  The Amended Complaint also refers at times generically to "Defendants."  No specific conduct by Samis other than his testimony to the Grand Jury is alleged in the Amended Complaint.

The claims asserted in the Amended Complaint against Samis, either as one of the "Police Defendants," or simply as a "Defendant," can be summarized thus:

Count One:      Violation of the plaintiff's civil rights under the New Jersey Constitution and the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2, by Defendants

| | |
|---|---|
| Count Two: | Violation of Section 1983 by the Police Defendants for violating the plaintiff's Fourth, Thirteenth, and Fourteenth Amendment rights |
| Count Three: | Violation of Section 1981 by the Police Defendants and Monmouth County, in that the "acts of the Defendants were motivated by racial animosity and the desire to injure, oppress, and intimidate the Plaintiff because of her race" |
| Count Four: | Violation of Section 1985 by the Police Defendants and Monmouth County for conspiring to violate the plaintiff's civil rights based on her race |
| Count Five: | Violation of Section 1986 by the Police Defendants for failing to prevent the violation of the plaintiff's civil rights |
| Count Seven: | Violation of the NJLAD by the Defendants |
| Count Eight: | False Imprisonment by the Defendants |
| Count Nine: | Intentional Infliction of Emotional Distress by the Defendants |
| Count Ten: | Negligent Infliction of Emotional Distress by the Defendants |
| Count Eleven: | Negligent Infliction of Emotional Distress by the "Defendants" [indistinguishable from Count Ten] |

(Am. Compl. at 7-12.)

**DISCUSSION**

I.   **Motion to Dismiss Standard**

A.   **Rule 12(b)(1)**

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1).  Fed.R.Civ.P. 12(b)(1). Such motion may be made at any time.  <u>Iwanowa v. Ford Motor Co.</u>, 67 F.Supp.2d 424, 437-38 (D.N.J. 1999).  The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction.  <u>Id.</u> at 438.  Under this standard, a court assumes that the allegations in the complaint are true, and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction.  <u>Cardio-Med. Assoc., Ltd. v. Crozer-Chester Med. Ctr.</u>, 721 F.2d 68, 75 (3d Cir. 1983); <u>Iwanowa</u>, 67 F.Supp.2d at 438.

Samis's arguments based on the proposition that he is immune from suit based on the Eleventh Amendment constitute a facial challenge to the jurisdictional basis for the Amended Complaint. (Samis Br. at 8.)  Accordingly, the Court must take the allegations of the Amended Complaint as true in considering those arguments.  <u>See</u> <u>Gould Elecs., Inc. v. United States</u>, 220 F.3d 169, 178 (3d Cir. 2000).

**B.    Rule 12(b)(6)**

Samis does not expressly premise the part of his motion seeking to dismiss the claims insofar as asserted against him on the basis of qualified immunity on Rule 12(b)(6).[2]  However, a defendant's claim that he is entitled to qualified immunity is properly evaluated under Rule 12(b)(6) rather than Rule 12(b)(1). See Frame v. Lowe, No. 09-2673, 2010 WL 503024, at *8 n.9 (D.N.J. Feb. 8, 2010) (citing Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)).  Additionally, insofar as Samis urges dismissal of claims asserted against him for failure to allege sufficient facts to make out a plausible right to relief, Rule 12(b)(6) provides the appropriate procedural vehicle.

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of

---

[2] While Samis's notice of motion and moving papers indicate that the current motion is a motion to dismiss, and his reply brief states that it is "in reply to Plaintiff's opposition to the motion to dismiss all claims against Detective Samis of the . . . MCPO," the certification submitted in support of the reply brief states that it is "made in support of the undersigned's reply to Plaintiff's opposition to Defendant Samis' Motion for Summary Judgment."  (Dkt. entry no. 59, Samis Reply Br. & Rosenthal Cert. (emphasis added).)  For reasons discussed in greater detail below, the Court treats the motion as a motion to dismiss, does not consider the documents submitted by both parties that constitute evidence not properly considered on a motion to dismiss, and declines to convert the motion to one for summary judgment.

the complaint, the plaintiff may be entitled to relief."
Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.
2008).  At this stage, a "complaint must contain sufficient
factual matter, accepted as true to 'state a claim to relief that
is plausible on its face.'  A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949
(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556
(2007).  "[W]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged--but it has not 'show[n]'--that the
'pleader is entitled to relief.'"  Iqbal, 129 S.Ct. at 1950
(quoting Rule 8(a)(2)).

     A court evaluating a Rule 12(b)(6) motion to dismiss for
failure to state a claim may consider the complaint, exhibits
attached thereto, matters of public record, and undisputedly
authentic documents if the claimant's claims are based upon those
documents.  See Pension Benefit Guar. Corp. v. White Consol.
Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

**II.  Eleventh Amendment Immunity**

     Samis contends that he is entitled to Eleventh Amendment
immunity for actions undertaken strictly in his official
capacity.  (Samis Br. at 10.)  The Eleventh Amendment provides
that "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of
another State, or by Citizens or Subjects of any Foreign State."
U.S. Const. amend. XI.  Sovereign immunity is not merely a
defense to liability, but provides an immunity from suit.  Fed.
Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 766 (2002).
Thus, "Eleventh Amendment immunity" prohibits citizens from
bringing suits against any of the states in federal court.
Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).

A suit is barred by Eleventh Amendment immunity "even though
the state is not named a party to the action, as long as the
state is the real party in interest."  Carter v. City of Phila.,
181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis
omitted).  This immunity therefore "extends to agencies,
departments and officials of the state when the state is the
real, substantial party in interest."  Landi v. Bor. of Seaside
Park, No. 07-5319, 2009 WL 606141, at *3 (D.N.J. Mar. 9, 2009).
In determining whether the named party is an arm of the state
such that the state is a real party in interest, courts are to
consider whether "the judgment sought would expend itself on the
public treasury or domain, or interfere with the public
administration, or if the effect of the judgment would be to
restrain the Government from acting, or to compel it to act."

9

<u>Fitchik v. N.J. Transit Rail Operations, Inc.</u>, 873 F.2d 655, 659 (3d Cir. 1989).

This Court previously found that MCPO, Samis's employer, is an arm of the state and thus entitled to Eleventh Amendment immunity.  (3-22-10 Mem. Op. at 5-6.)  The payment of any judgment arising out of this suit for actions taken by Samis in his official capacity would come from the state treasury.  <u>See Wright v. State</u>, 778 A.2d 443, 464 (N.J. 2001).  The same considerations leading the Court to conclude that MCPO was entitled to Eleventh Amendment immunity counsel in favor of finding that Samis, in his official capacity, is immune as well. <u>See</u> <u>Landi</u>, 2009 WL 606141, at *4-5; <u>accord</u> <u>Slinger v. New Jersey</u>, 366 Fed.Appx. 357, 360 (3d Cir. 2010) (stating that immunity of state agency extends to employees of that agency sued in their official capacities); <u>Capogrosso v. Sup. Ct. of N.J.</u>, 588 F.3d 180, 185 (3d Cir. 2009) (same).  Accordingly, the Amended Complaint insofar as it is asserted against Samis in his official capacity will be dismissed.[3]

_____

[3] The Court observes that the alleged constitutional violations asserted under Section 1983 are not exempt from the Court's finding that Eleventh Amendment immunity applies, because a state official acting in his official capacity is not a "person" within the meaning of Section 1983.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66-71 (1989) (noting that Congress, in passing Section 1983, did not intend to override the immunity protections afforded a state and its agents under the Eleventh Amendment).

Samis is not entitled to Eleventh Amendment immunity insofar as the Amended Complaint is asserted against him in his individual capacity.  Slinger, 366 Fed.Appx. at 360-61 (citing Hafer v. Melo, 502 U.S. 21, 31 (1991)).  Samis argues that the plaintiff has not specified which claims are against him in his individual capacity as opposed to his official capacity, and therefore contends that "all claims against him should be dismissed."  (Samis Reply Br. at 4-5.)  However, the Court is constrained by the Third Circuit's recent decision in Slinger, which found that the district court erred in dismissing the claims asserted against county prosecutors in their individual capacities, notwithstanding the district court's finding that "all of the actions which form the basis of the Complaint were taken by Prosecutor Defendants in their official capacities. There are no facts alleged in the Complaint that suggest that the Prosecutor Defendants acted outside of their official capacity." Slinger v. New Jersey, No. 07-5561, 2008 WL 4126181, at *10 (D.N.J. Sept. 4, 2008), rev'd, 366 Fed.Appx. at 360-61.  Even accepting Samis's contention that the plaintiff has not set forth factual allegations distinguishing claims against Samis in his individual capacity from his official capacity, this provides no basis for the Court to dismiss the individual capacity claims in the context of the current motion.  Slinger, 366 Fed.Appx. at 361; see also Hafer, 502 U.S. at 27-28 (rejecting state

11

official's attempt to "overcome the distinction between official-
and personal-capacity suits by arguing that Section 1983
liability turns not on the capacity in which state officials are
sued, but on the capacity in which they acted when injuring the
plaintiff"). Thus, the Court turns to the other bases for
dismissal asserted by Samis.

### III. Qualified Immunity

Samis argues that he is entitled to qualified immunity for
the claims asserted against him in the Amended Complaint,
"regardless of whether they concern his 'official' or
'individual' capacities." (Samis Br. at 12.) Samis further
takes the position that "[t]he only possible federal cause of
action against Samis is for false imprisonment," in violation of
the Fourth Amendment, based on the plaintiff's allegation that
Samis's allegedly false Grand Jury testimony caused her to be
falsely imprisoned. (Id. at 13.) The plaintiff, in contrast,
contends that Samis's alleged involvement in the "warrantless
search and arrest of Tanya Peteete without probable cause[,]
coupled with [Samis's] multiple misrepresentations about" the
plaintiff, ultimately resulted in her indictment and subsequent
six-month period of detention. (Pl. Br. at 5.) Thus, the
plaintiff contends that her claims against Samis extend beyond
false imprisonment under the Fourth Amendment, listing a number
of alleged constitutional violations. (Id.; Am. Compl. at 8.)

Although the plaintiff does not cite specific constitutional provisions, the Court summarizes the allegations as comprising Fourth Amendment violations (arresting the plaintiff, and searching the plaintiff's person and effects, without probable cause), Fourteenth Amendment violations (denying the plaintiff's rights to freedom of travel, privacy, due process, and equal protection of the laws), and a Thirteenth Amendment violation (subjecting the plaintiff to involuntary servitude).  (Pl. Br. at 5; Am. Compl. at 8.)

Because entitlement to qualified immunity rests on the question of whether an official's conduct was lawful, and because we determine below that Samis's conduct during the Grand Jury proceedings is entitled to absolute rather than qualified immunity, we decline to pursue a claim-by-claim analysis and instead consider whether Samis's conduct with respect to the plaintiff's arrest, as alleged by the plaintiff, exposes him to civil liability under Section 1983.

**A.   Samis's Involvement in Plaintiff's Arrest**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (citation omitted).  It is "an immunity from suit rather than a mere

13

defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted).

Application of the doctrine involves a two-step analysis. First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right. Pearson, 129 S.Ct. at 815-16. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 816. The order in which the Court addresses each step rests within the discretion of the Court "in light of the circumstances of the particular case at hand." Id. at 818.

Government officials "are entitled to qualified immunity only if the Court can conclude, based on the undisputed facts in the record, that [the officials] reasonably, although perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation." Mantz v. Chain, 239 F.Supp.2d 486, 496 (D.N.J. 2002). The burden of proving entitlement to qualified immunity rests with the defendant. See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

In Section 1983 cases involving alleged violations of the Fourth Amendment, the qualified immunity inquiry considers "whether a reasonable officer would have believed that his or her

14

conduct was lawful, in light of the clearly established law and the information in the officer's possession." Palma v. Atl. County, 53 F.Supp.2d 743, 769 (D.N.J. 1999) (citation and quotation omitted).  Police officers who "reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity" for claims of Fourth Amendment violations, including unlawful arrest and false imprisonment. Id.  Conversely, "[a] mistake is not reasonable when it amounts to the violation of a 'clearly established' right, such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Williams v. Atl. City Dep't of Police, No. 08-4900, 2010 WL 2265215, at *4 (D.N.J. June 2, 2010) (quoting Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  To state a claim for unlawful arrest under Section 1983 and the Fourth Amendment, a plaintiff must assert that she was arrested by a state actor without probable cause.  Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997).

Probable cause to arrest without a warrant "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person being arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

Samis contends that probable cause existed because (1) the Police Defendants "located the heroin throughout the house", (2) "everybody at the property was arrested for CDS violations", (3) "[n]o one at the scene took responsibility for narcotics inside the residence", and (4) the plaintiff "verified that [she] resided at this location." (Samis Reply Br. at 9-10.)  These assertions are generally consistent with the facts alleged in the Amended Complaint.  Although Samis provides documentation tending to indicate what knowledge Samis and the other Police Defendants relied upon in making the determination that probable cause existed to arrest the plaintiff, the Court cannot and will not consider those documents on the current motion to dismiss.  (Dkt. entry no. 59, Rosenthal Cert., Exs. 2-4 (APPD and MCPO records constituting "matters outside the pleadings" under Rule 12(d)).) See, e.g., Platt v. Freedom Mortg. Corp., No. 10-968, 2010 WL 4810652, at *3 & n.2 (D.N.J. Nov. 16, 2010).  Furthermore, we will not convert the current motion to a motion for summary judgment, pursuant to Rule 12(d), because the plaintiff has not

had an opportunity to file a sur-reply and accompanying affidavits or other documentary evidence.

The Fourth Amendment generally requires "individualized suspicion of wrongdoing" to establish probable cause. Chandler v. Miller, 520 U.S. 305, 313 (1997); see also Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). We find that at this juncture, it cannot be said that Samis did not "knowingly violate the law" in determining that probable cause to arrest the plaintiff existed, because the Court does not have a fully developed record before it setting forth the basis for the probable cause determination at the time it was made. The pleadings do not indicate any basis for Samis or the Police Defendants to have departed from the clearly established requirement of individualized suspicion, or an exception thereto, with respect to the plaintiff.[4]

---

[4] Upon review of a fully developed record, Samis may be entitled to qualified immunity even in the absence of individualized suspicion. (See dkt. entry no. 61, 12-13-10 Mem. Op. at 13-14 (finding certain Police Defendants entitled to qualified immunity on motion for summary judgment)). See Williams, 2010 WL 2265215, at *4-6 (holding detective could have reasonably believed plaintiff's presence in apartment subjected to drug raid established probable cause to arrest plaintiff on theory of constructive possession, where none of the individuals present admitted ownership of the suspected contraband, and nature of evidence found in common areas of the apartment suggested a "routine business of drug sales in the apartment," such that detective was entitled to qualified immunity).

17

We cannot determine on the record at this time whether Samis violated the plaintiff's Fourth Amendment right not to be arrested without probable cause, or, if such violation did occur, whether Samis is nonetheless entitled to qualified immunity by reason of being reasonably mistaken in making the probable cause determination.  Because the remainder of the alleged constitutional violations are essentially derivative of the claim of unlawful arrest, we likewise are unable to determine whether Samis is entitled to qualified immunity on those alleged violations as well.  We will therefore deny the part of Samis's motion seeking to dismiss Count Two, without prejudice to move in the future for summary judgment, insofar as Count Two asserts constitutional violations pursuant to Section 1983 against Samis in his individual capacity.

### B.   Samis's Testimony to Grand Jury

Samis asserts that he is entitled to qualified immunity for making allegedly false statements during Grand Jury testimony. (Samis Br. at 16.)  However, we find that absolute, rather than qualified, immunity insulates Samis from civil liability arising out of his allegedly false testimony to the Grand Jury.  A witness who testifies, even falsely, before the Grand Jury is absolutely immune from suit.  Jeffreys v. McDonnell, No. 08-4681, 2009 WL 1288237, at *2 (D.N.J. Apr. 30, 2009) (citing Briscoe v. LaHue, 460 U.S. 325, 330-46 (1983)); accord McKinney v. Passaic

<u>Cnty. Prosecutor's Office</u>, No. 08-3149, 2009 WL 113790, at *6
(D.N.J. Jan. 16, 2009) (dismissing Section 1983 claims based on
detective's allegedly false and misleading Grand Jury testimony).
Therefore, all claims insofar as they are based on plaintiff's
allegations that Samis falsely testified during the Grand Jury
proceedings will be dismissed with prejudice.[5]

## IV.  Rule 8(a) - Sufficiency of Pleadings as to Discrimination Claims

Samis contends that the claims alleging racial
discrimination should be dismissed for failure to set forth a
plausible cause of action sufficiently supported by factual
allegations.  (Samis Reply Br. at 8.)  We therefore consider
whether the discrimination claims meet the pleading standard
under Rule 8(a) and <u>Twombly</u>.

### A.  Count One

Count One asserts a "civil rights action" under the New
Jersey Civil Rights Act and New Jersey Constitution.  (Am. Compl.
at 7.)  The New Jersey Civil Rights Act provides a private cause
of action to redress, <u>inter</u> <u>alia</u>, violations of the New Jersey
Constitution.  N.J.S.A. § 10:6-2(c).

---

[5] This ruling does not result in the dismissal of any
particular Count, because the Amended Complaint does not set
forth any single cause of action against Samis based on his
allegedly false Grand Jury testimony.  The Court presumes that
these allegations were intended to bolster the plaintiff's civil
rights claims.

The plaintiff invokes three provisions of Article I of the New Jersey Constitution in Count One:

1.  All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty. . . .
    . . .
5.  No person shall be denied the enjoyment of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry, or national origin.
    . . .
7.  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

N.J. Const. of 1947, Art. I, ¶¶ 1, 5, & 7.  The plaintiff states in Count One that the "illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a de facto policy to discriminate, use unlawful force, falsely arrest and detain, and illegally search Plaintiff.  The actions of the Defendants . . . also represent a de facto policy to deny Plaintiff her rights to travel, equal protection, contract and privacy."  (Am. Compl. at 7.)

The Court, as discussed above, cannot determine at this juncture whether the plaintiff's arrest and the subsequent search of her person incident to that arrest were reasonable.  Thus, as with Count Two, we will deny without prejudice the part of

Samis's motion seeking to dismiss Count One insofar as it asserts an illegal arrest, search, and subsequent deprivation of a liberty interest without due process under state law.  See Awkward v. Willingboro Police Dep't, No. 07-5083, 2010 WL 3906785, at *5 n.7 (D.N.J. Sept. 30, 2010) ("Because the analysis of claims under state constitutional law is similar to the analysis under the Fourth Amendment, no separate analysis will be undertaken for plaintiffs [sic] claims arising under the New Jersey Constitution."); see also Joyce v. City of Sea Isle City, No. 04-5345, 2008 WL 906266, at *21 (D.N.J. Mar. 31, 2008) (stating that because the parties did not cite authority or otherwise suggest that court's analysis of claims brought under paragraphs 1 and 5 of Article I of the New Jersey Constitution, the court would rely on the same reasoning and reach the same outcomes as it did in considering the same conduct with reference to Section 1983).

We find, however, that Count One, insofar as it asserts unlawful discrimination under Article I, paragraph 5 of the New Jersey Constitution, is ripe for disposition in the current motion.  For the reasons discussed below, the Court will dismiss the part of Count One alleging racial discrimination by Samis.

**B.   Count Three**

Count Three asserts a cause of action under Section 1981, which provides:

21

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981.  To state a claim under Section 1981, the

plaintiff must show "(1) that he belongs to a racial minority;

(2) an intent to discriminate on the basis of race by the

defendant; and (3) discrimination concerning one or more of the

activities enumerated in § 1981." Pryor v. Nat'l Coll. Athletic

Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (citation and quotation

omitted).

**C.   Count Four**

The plaintiff does not specify in Count Four which part of

Section 1985 she relies upon, but the Court presumes that the

plaintiff intends to invoke Section 1985(3), which prohibits

conspiracies to deprive persons of "the equal protection of the

laws, or of equal privileges and immunities under the laws."  42

U.S.C. § 1985(3).  To state a claim under Section 1985, the

plaintiff must allege "a conspiracy, motivated by a

discriminatory based animus, for the purpose of depriving any

person or class of the equal protection of the law and an act in

furtherance of the conspiracy, whereby a person is injured."

Lee-Patterson v. N.J. Transit Bus Ops., Inc., 957 F.Supp. 1391,

22

1403 (D.N.J. 1997).  Section 1985 "does not apply to all conspiratorial tortious interference with the rights of others, but only to those motivated by some class-based, invidiously discriminatory animus."  Id. (quotation and citation omitted).

### D.   Count Five

Section 1986 "is a companion to § 1985(3) and provides the claimant with a cause of action against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution."  Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).  It does not create an independent cause of action.  See Black v. Bayer, 672 F.2d 309, 312-13 n.4 (3d Cir. 1982).  Existence of a Section 1985 claim is therefore a prerequisite of a Section 1986 claim.  Clark v. Clabaugh, 20 F.3d 1290, 1295 n.5 (3d Cir. 1994).

### E.   Count Seven

Count Seven asserts a cause of action under the NJLAD, without citing any particular provision of, or right protected by, the NJLAD.  (Am. Compl. at 10-11.)  It baldly alleges that the "actions of Defendants violated Plaintiff's rights pursuant to the" NJLAD.  (Am. Compl. at 11.)  The Court is at a loss to discern any plausible theory of how Samis or the Police Defendants may have violated the NJLAD with respect to the plaintiff in light of her abject failure to allege anything

23

beyond "discrimination."  N.J.S.A. § 10:5-2, which prohibits "unlawful discrimination," does not appear to have any applicability to this action.

### F.   Plaintiff's Failure to Allege Facts Supporting Inference of Racial Animus

A review of the Amended Complaint does not reveal any basis for the plaintiff's conclusory statement that she was arrested "due to her race and the illegal practice of racial profiling." (Am. Compl. at 5.)  In fact, the Amended Complaint alleges that the plaintiff asked why she was being arrested, and a police officer responded, "for living here" – referring to the fact of the plaintiff's residence at the house which had just moments before been the location of a drug raid resulting in the arrest of every person at the residence.  (Am. Compl. at 4.)  This statement, as well as the alleged statement of another officer suggesting that "maybe [the plaintiff's children] are better off [with their mother in custody]" are race-neutral.  (<u>Id.</u> at 5.)

Each of the plaintiff's discrimination claims require some allegation of racially-motivated conduct.  No allegations set forth a basis for concluding that Samis, or any other Police Defendant, acted with racial animus.  The Amended Complaint therefore fails to raise the plaintiff's "right to relief above the speculative level."  <u>See</u> <u>Twombly</u>, 550 U.S. at 545; <u>see also</u> <u>Doe v. Sizewise Rentals, LLC</u>, No.09-3409, 2010 WL 4861138, at *5 (D.N.J. Nov. 22, 2010) (dismissing Section 1981 claims insofar as

asserted against defendants against whom plaintiff had made only conclusory allegation that defendants' actions were racially motivated); Lee-Patterson, 957 F.Supp. at 403 (dismissing Section 1985 and Section 1986 claims where plaintiff made "insufficient factual allegations . . . to support a claim of conspiracy motivated by class-based, discriminatory animus."). Accordingly, Count Three, Count Four, Count Five, Count Seven, and the part of Count One alleging discrimination under Article I, paragraph 5, of the New Jersey Constitution, insofar as they are asserted against Samis in his individual capacity, will be dismissed for failure to state a claim upon which relief can be granted.

## V.   Remaining State Law Claims

Samis contends that state statute and common law entitle him to immunity to the plaintiff's state law claims for intentional infliction of emotional distress and negligent infliction of emotional distress. (Samis Reply Br. at 13.) With regard to the plaintiff's state law claim for false imprisonment, Samis contends it should be dismissed because probable cause existed to arrest the plaintiff. (Id. at 13-14.) Samis also argues that all state law claims should be dismissed for failure to comply with the notice of claim requirements of the New Jersey Tort Claims Act, N.J.S.A. § 59:8-1 et seq.

**A.   Count Eight**

Count Eight asserts a claim for false imprisonment.  (Am. Compl. at 11.)  The plaintiff alleges that "Defendants had a duty not to falsely imprison Plaintiff," but "violated this duty by causing Plaintiff to be imprisoned for approximately six (6) months."  (Id.)

False imprisonment occurs when a person is (1) arrested or detained against his or her will, (2) without proper legal authority or justification.  See Leang v. Jersey City Bd. of Educ., 969 A.2d 1097, 1117 (N.J. 2009).  Probable cause to arrest is an absolute defense to a false imprisonment claim.  See Wildoner v. Bor. of Ramsey, 744 A.2d 1146, 1154 (N.J. 2000).  As the Court has already noted in reference to the plaintiff's Section 1983 claim insofar as it alleged unlawful arrest or false imprisonment, we cannot at this juncture determine whether probable cause existed to arrest the plaintiff for constructive possession of CDS.  Samis therefore cannot establish justification that would provide him a complete defense to the plaintiff's false imprisonment claim.  Moreover, the plaintiff has alleged facts supporting a claim for false imprisonment.  We therefore decline to dismiss Count Eight on the basis of this absolute defense.

The plaintiff's failure to comply with the notice of claim provision of the New Jersey Tort Claims Act, however, provides an

alternative basis for dismissal of the plaintiff's false
imprisonment claim.  The plaintiff does not dispute Samis's
contention that the plaintiff has never filed a tort claims
notice, as required by N.J.S.A. § 59:8-8.  This provision
requires that a plaintiff must provide notice of a tort claim to
the public entity or public employee she intends to sue within
ninety days of accrual of the cause of action.  N.J.S.A. § 59:8-3
and -8.[6]  Such plaintiff is "forever barred" from recovering
against a public employee or public entity for failure to comply
with this notice provision, or where two years have elapsed since
the accrual of the claim.  N.J.S.A. § 59:8-8(a)-(b).  The notice
of claim requirement applies to state law tort claims brought in
federal court where a plaintiff also alleges federal and state
constitutional violations.  Cnty. Concrete Corp. v. Town of
Roxbury, 442 F.3d 159, 174-75 (3d Cir. 2006).

The plaintiff cites no authority for her argument that she
should be excused from the notice of claim provision because "the
instant action was filed in Federal Court" in lieu of seeking
permission in New Jersey Superior Court to file a late notice of
claim pursuant to the procedure outlined in N.J.S.A. § 59:8-9.
(Pl. Br. at 6.)  Bringing a state law tort claim against a public

---

[6] While a state court, in certain circumstances and upon a
motion, may extend the ninety-day deadline for filing pre-suit
notification to as long as one year following accrual of the
action, there is no indication that the plaintiff made any such
application here.  N.J.S.A. § 59:8-9.

entity or public employee in federal court does not satisfy this statutory notice requirement.  Cnty. Concrete Corp., 442 F.3d at 174-75.

It also appears that the plaintiff is now barred by the statute of limitations from pursuing this claim.  "False arrest and false imprisonment claims accrue at the time of the detention."  Hyatt v. Cnty. of Passaic, 340 Fed.Appx. 833, 838 (3d Cir. 2009).  Insofar as more than two years have elapsed since the accrual of the claim on the date of her arrest, September 19, 2007, and she has not filed a notice of tort claim, the plaintiff is "forever barred" from bringing this claim.  Accordingly, Count Eight will be dismissed with prejudice.[7]

**B.   Count Nine, Count Ten, and Count Eleven**

Count Nine asserts a claim for intentional infliction of emotional distress.  (Am. Compl. at 11.)  Count Ten and Count Eleven assert identical claims for negligent infliction of emotional distress.  (Am. Compl. at 12.)[8]  Under New Jersey law, in order to survive a motion to dismiss these types of claims,

---

[7] We decline to consider the plaintiff's arguments that the notice requirement should be excused "in the interests of justice" or due to "extraordinary circumstances," finding no procedural basis for granting such review or relief.  Cf. N.J.S.A. § 59:8-9 (stating that application for permission to file late notice of claim is to be made to the Superior Court, supported by affidavits showing "sufficient reasons constituting extraordinary circumstances for his failure to file a claim").

[8] This redundancy appears to be a typographical error.

the plaintiff must plead facts to show that "(1) the defendant acted intentionally or recklessly, or, negligently; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) the defendant's actions were the proximate cause of the emotional distress; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it." DiPietro v. N.J. Fam. Support Payment Ctr., No. 08-4761, 2009 WL 1635568, at *8 (D.N.J. June 10, 2009).

The New Jersey Tort Claims Act provides that a "public employee is not liable if he acts in good faith in the execution or enforcement of any law," except as to claims for false arrest or false imprisonment.  N.J.S.A. § 59:3-3.  Samis, as a public employee, would be entitled to this statutory immunity with respect to the plaintiff's emotional distress claims if he could show that he acted in good faith.  However, the burden of proof is upon Samis to prove entitlement to this immunity.  Toto v. Ensuar, 952 A.2d 463, 470 (N.J. 2008). Good faith may be shown by demonstrating either that the employee demonstrated "objective reasonableness" or that he behaved with "subjective good faith." Id.  Because determination of Samis's entitlement to this immunity requires a factual analysis, it is premature on the current motion to dismiss, and is more appropriately decided at the summary judgment stage.  See Leang, 969 A.2d at 1112.  Thus,

29

we instead consider the pleading sufficiency of the emotional distress claims.

To state a claim for intentional infliction of emotional distress, a plaintiff must make factual allegations demonstrating that the defendant engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988).  The Amended Complaint sets forth no facts suggesting extreme or outrageous conduct by Samis or the Police Defendants.  Count Nine will therefore be dismissed insofar as it is asserted against Samis in his individual capacity.

To state a claim for negligent infliction of emotional distress, the plaintiff must show (1) negligent conduct by the defendant that (2) proximately caused the plaintiff's injuries. Decker v. Princeton Packet, Inc., 561 A.2d 1122, 1128 (N.J. 1989).  The tort "can be understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care."  Id.  The only duty of care alleged by the plaintiff is the "Defendant['s] . . . duty not to falsely imprison Plaintiff."  (Am. Compl. at 11.)  As the Court has declined to make a finding at this juncture as to the reasonableness of the plaintiff's arrest and

30

subsequent detention, we find that the plaintiff has adequately alleged negligent conduct.  But with respect to the plaintiff's allegations regarding her injuries, we find that her conclusory allegation that she has suffered "humiliation, mental anguish, and emotional distress," is "insufficient as a matter of law to support a finding of severe mental distress that no reasonable person could be expected to endure."  <u>Turner v. Wong</u>, 832 A.2d 340, 347 (N.J. App. 2003).  The part of Samis's motion seeking to dismiss Count Ten insofar as asserted against him in his individual capacity will therefore be granted.  The Court will dismiss Count Eleven as redundant to Count Ten.[9]

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant in part and deny in part Samis's motion to dismiss the Amended Complaint insofar as asserted against him.

The Court will grant the part of the motion seeking dismissal of the Amended Complaint in its entirety, insofar as it is asserted against Samis in his official capacity, pursuant to Rule 12(b)(1).

The Court will grant the motion, and dismiss the Amended Complaint, with respect to the following causes of action,

---

[9] We observe that Count Nine, Count Ten, and Count Eleven are, like Count Eight, subject to dismissal on the additional basis of the plaintiff's failure to comply with the notice of claim provisions of the New Jersey Tort Claims Act.  Thus, the plaintiff will not be given leave to amend these claims.

insofar as they are asserted against Samis in his individual
capacity, pursuant to Rule 12(b)(6):  (1) the part of Count One
asserting a violation of Article I, paragraph 5, of the New
Jersey Constitution; (2) Count Three; (3) Count Four; (4) Count
Five; (5) Count Seven; (6) Count Eight; (7) Count Nine; (8) Count
Ten; (9) Count Eleven; and (10) any and all claims arising from
Samis's alleged false Grand Jury testimony.

The Court will deny the motion without prejudice with
respect to Count Two, and the part of Count One asserting a
violation of Article I, paragraphs 1 and 7, of the New Jersey
Constitution, insofar as they are asserted against Samis in his
individual capacity.

The Court will issue an appropriate order.


                                   s/ Mary L. Cooper
                              **MARY L. COOPER**
                              United States District Judge


Dated:    December 13, 2010