**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
                                    :
TANYA PETEETE,                      :
                                    :   CIVIL ACTION NO. 09-1220 (MLC)
     Plaintiff,                     :
                                    :   MEMORANDUM OPINION
     v.                             :
                                    :
ASBURY PARK POLICE                  :
DEPARTMENT, et al.,                 :
                                    :
     Defendants.                    :
                                    :
```

**COOPER, District Judge**

The plaintiff brought this action alleging, inter alia, various civil rights violations under the New Jersey Constitution, the New Jersey Civil Rights Act ("NJCRA"), the New Jersey Law Against Discrimination, and 42 U.S.C. §§ ("Sections") 1981, 1983, 1985, and 1986.  (Dkt. entry no. 30, Am. Compl.)  The plaintiff further alleges causes of action for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation.  (Id.)  The Amended Complaint names as defendants the City of Asbury Park; Asbury Park Police Department ("APPD"); Chief Mark Kinmon, Sergeant Jeff White, Officer Lorenzo Pettway ("Pettway"), Officer Nicholas Townsend, and Officer Daniel Kowsaluk, all of the APPD; the County of Monmouth; Monmouth County Prosecutor's Office ("MCPO"); Monmouth County Sheriff's Office ("MCSO"); Sheriff's Officer Alex Torres ("Torres") of the MCSO; and Detective Scott Samis ("Samis") of the MCPO.  (Id. at 2-4.)

The Court previously dismissed the Amended Complaint insofar as it is asserted against the MCPO, finding that the MCPO was immune from liability under the Eleventh Amendment. (<u>See</u> dkt. entry no. 48, 3-22-10 Mem. Op.; dkt. entry no. 49, 3-22-10 Order & J.)  The Court entered judgment in favor of the County of Monmouth, MCSO, Torres, and Pettway (collectively, the "County Defendants") on December 13, 2010.  (Dkt. entry no. 61, County Defs. 12-13-10 Mem. Op.; dkt. entry no. 62, County Defs. 12-13-10 Order.)  Also on December 13, 2010, the Court denied in part Samis's motion to dismiss the Amended Complaint insofar as asserted against him, finding that Samis had not shown at the motion to dismiss stage that he was entitled to qualified immunity on the plaintiff's claims against Samis in his individual capacity for violations of her federal and state constitutional rights under Section 1983 and the NJCRA.  (Dkt. entry no. 63, 12-13-10 Samis Mem. Op.; dkt. entry no. 64, Samis 12-13-10 Ord.)  In its Order, the Court observed that two counts of the Amended Complaint remained viable as asserted against Samis in his individual capacity only:  Count One, insofar as it asserts a claim under the NJCRA for violation of the plaintiff's rights under Article I, paragraphs 1 and 7 of the New Jersey Constitution; and Count Two, insofar as it asserts a claim under Section 1983 for violation of the plaintiff's Fourth Amendment rights.  (Samis 12-13-10 Order at 2.)

Samis now moves pursuant to Federal Rule of Civil Procedure ("Rule") 56 for judgment in his favor as to the remaining claims pending against him. (Dkt. entry no. 66, Samis Mot. for Summ. J.) The plaintiff opposes the motion, and cross-moves to compel a deposition of Samis. (Dkt. entry no. 68, Mot. Compel Deposition.) The plaintiff has also cross-moved for additional time to conduct discovery, pursuant to Rule 56(f). (Dkt. entry no. 76, Rule 56(f) Mot. & Opp'n to Samis Mot. Summ. J.)[1] The Court now decides the motion and cross motions on the papers, pursuant to Rule 78(b). For the reasons stated herein, the Court will grant Samis's motion for summary judgment and will deny as moot the plaintiff's cross motions to compel Samis's deposition and for additional time to conduct discovery.

### BACKGROUND

The parties being well-versed in the underlying facts of this case, we relate the factual background as it pertains to the instant motion only. The conduct complained of by the plaintiff relates to her arrest outside her residence on September 19, 2007, where a drug raid of the residence by members of the APPD and MCSO was in progress. (Am. Compl. at 4.) The drug raid was

---

[1] The parties acknowledged that while the plaintiff's cross motion was submitted as a Rule 56(f) motion, Rule 56 has been amended and as of December 1, 2010, Rule 56(d) governs applications for additional discovery in the context of a summary judgment motion. (Undocketed Letter from Plaintiff's Counsel to Magistrate Judge Bongiovanni, dated 1-26-11.)

the effort of the Monmouth Country Narcotic Strike Force/Gang Task Force ("Task Force"), which was organized under the direction of the MCPO. (Dkt. entry no. 59, Rosenthal Cert., Ex. G, Samis Arrest Rep. at 4.) Ebony Peteete, a relative of the plaintiff's husband, was the target of an investigation in which the Task Force arranged a controlled buy of heroin from her. (Id. at 4-5.) Following a successful controlled buy in the vicinity of the residence, Samis directed Task Force members to arrest Ebony Peteete and the person who had delivered the drugs on her behalf at the residence, where they were observed. (Id. at 5.)[2] Inside the residence, Samis observed what appeared to be heroin in plain view, and Task Force members conducted a search of the residence. (Id. at 6; Rosenthal Cert., Ex. E, Pettway Arrest Rep. at 2-3.) The following evidence was observed "on top of the freezer in the kitchen area" and collected by the Task Force:

1. Sixteen empty hypodermic needles with caps.
2. One small black leather wallet containing eight decks of suspected CDS [controlled dangerous substance] Heroin & assorted personal effects.
3. Fourteen individually wrapped glassine decks of suspected CDS Heroin in magazine paper . . . stamped "Games" & "Top Secret" in red ink.
4. Five bundles each containing ten decks of suspected CDS Heroin, totaling fifty . . . wrapped in glassine bags stamped with games in red ink.

---

[2] Samis had obtained arrest warrants for Ebony Peteete and four other individuals the day before the raid. (Samis Arrest Rep. at 4.)

>      5.   One magazine paper package containing two bundles
>           each containing ten decks of suspected CDS Heroin
>           wrapped in glassine packets stamped "Top Secret"
>           in red ink.
>      6.   Black leather wallet containing assorted personal
>           effects & $379.00 in U.S. Currency.
>      7.   Thirty-two bills of assorted U.S. Currency
>           totaling $700.00. . . . Buy money used by the
>           undercover police officer to purchase CDS.
>      8.   Brown leather pocket book containing assorted
>           personal effects.
>      9.   Assorted personal paperwork & criminal complaints
>           in the name of Eboney Peteete and Ricardo Wesley.
>     10.   One black Nextel Boost cellular telephone.
>     11.   Standard house key with a purple key ring labeled
>           #23 and a Shop Rite Plus discount card.
>     12.   Pieces of assorted broken costume jewelry.
>     13.   $995.00 in U.S. currency.

(Pettway Arrest Rep. at 3.)  The search also turned up nineteen glassine packets of suspected CDS Heroin in the living room, one glassine packet of suspected CDS Heroin in an upstairs bedroom where the elderly owner or renter of the house was sleeping, and a gun in the attic.  (Id. at 3-4.)  No CDS or other contraband were found in the first-floor bedroom the plaintiff shared with her husband.  (Dkt. entry no. 60, Pl. Resp. to County Defs.' Stmt. of Undisputed Facts at 2.)  According to Samis's report, "No one at the scene would take responsibility for the narcotics inside the residence," and all the subjects present at the scene were arrested.  (Samis Arrest Rep. at 7.)

The plaintiff and her family arrived at the residence as the police were leaving the scene.  (Id.; Pettway Arrest Rep. at 4.)  The task force believed there to be an active arrest warrant for

one of the passengers in the plaintiff's vehicle for narcotics distribution.  (Samis Arrest Rep. at 7; Pettway Arrest Rep. at 4.)  The plaintiff and her husband were placed under arrest after verifying to the officers that they resided at the location where the raid had just occurred, and the plaintiff's handbag was searched incident to her arrest.  (Samis Arrest Rep. at 7; Am. Compl. at 4.)  The plaintiff alleges that she asked the officers why she was being arrested, and one responded, "For living here." (Am. Compl. at 4.)  When the plaintiff expressed concern about who would care for her children, an officer allegedly told her, "Hopefully you are never coming home. . . . Maybe they are better off."  (Id. at 5.)  At least eleven individuals, including the plaintiff, were arrested as a result of the raid.  (Samis Arrest Rep. at 4-6.)

   The plaintiff was charged with possession and distribution of CDS, based on a constructive theory of possession.  (Am. Compl. at 4; Rosenthal Cert., Ex. H, Kowsaluk Arrest Rep.)  The plaintiff was unable to post bail and remained at the Monmouth County jail for approximately six months.  (Am. Compl. at 5; Samis Arrest Rep. at 10.)  She was eventually released when she entered a plea of guilt to an unrelated aggravated assault charge and the CDS charges were dropped.  (Am. Compl. at 5; Rosenthal Cert., Ex. C, Presentence Rep. at 1-2.)

6

The plaintiff alleges that Samis presented false or misleading information regarding the incident to the Grand Jury. (Id. at 5-6.)  However, the Court previously determined that Samis was entitled to absolute immunity from suit with regard to his grand jury testimony.  (Samis 12-13-10 Mem. Op. at 18-19.)

## DISCUSSION

### I. Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

### II. Qualified Immunity - Section 1983 Claim

Samis argues that he is entitled to qualified immunity for the remaining claims asserted against him in the Amended Complaint.  (Dkt. entry no. 59, Samis Br. at 7.)  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (citation omitted). It is "an immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted).

Application of the doctrine involves a two-step analysis. First, a court must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right. Pearson, 129 S.Ct. at 815-16. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. at 816. The order in which the Court addresses each step rests within the discretion of the Court "in light of the circumstances of the particular case at hand." Id. at 818.

Government officials "are entitled to qualified immunity only if the Court can conclude, based on the undisputed facts in the record, that [the officials] reasonably, although perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation." Mantz v. Chain, 239 F.Supp.2d 486, 496 (D.N.J. 2002). The burden of proving entitlement to qualified immunity rests with the defendant. See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

8

In Section 1983 cases involving alleged violations of the Fourth Amendment, the qualified immunity inquiry considers "whether a reasonable officer would have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Palma v. Atl. County, 53 F.Supp.2d 743, 769 (D.N.J. 1999) (citation and quotation omitted).  Police officers who "reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity" for claims of Fourth Amendment violations, including unlawful arrest and false imprisonment.  Id.  Conversely, "[a] mistake is not reasonable when it amounts to the violation of a 'clearly established' right, such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Williams v. Atl. City Dep't of Police, No. 08-4900, 2010 WL 2265215, at *4 (D.N.J. June 2, 2010) (quoting Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  To state a claim for unlawful arrest

9

under Section 1983 and the Fourth Amendment, a plaintiff must assert that she was arrested by a state actor without probable cause. Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997). Probable cause to arrest without a warrant "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person being arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

The Fourth Amendment generally requires "individualized suspicion of wrongdoing" to establish probable cause. Chandler v. Miller, 520 U.S. 305, 313 (1997); see also Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."). However, probable cause to arrest on a constructive theory of possession may exist in cases where a search of a residence turns up contraband in such quantities to suggest a "routine business of drug sales in the apartment," when no individual at the residence admits ownership of the contraband. See Williams, 2010 WL 2265215, at *4-6.

The Arrest Reports of Samis and Pettway pertaining to the September 19, 2007 incident, which have gone unchallenged by the plaintiff in both this motion and in the County Defendants'

10

motion for summary judgment, establish that there were a large number of glassine packets of suspected heroin in plain view on top of the freezer in the kitchen and in the living room, and that no one at the residence took responsibility for or admitted ownership of the drugs.  (Samis Arrest Rep. at 6-7.)[3]  We find with respect to Samis, as we did with the County Defendants, that a reasonable officer could have believed that probable cause existed to arrest all residents, including the plaintiff, on a theory of constructive possession.  See Ginter v. Skahill, 298 Fed.Appx. 161, 164 (3d Cir. 2008) (noting that even where a suspect does not physically possess contraband, "probable cause may still be established through constructive possession"); Williams, 2010 WL 2265215, at *5-6.  Because Samis could have reasonably, even if mistakenly, concluded on these facts that probable cause existed, he is entitled to qualified immunity because the plaintiff did not suffer a violation of a "clearly established" right.

---

[3] While the plaintiff contends that "Ebony Peteete admitted that the drugs in the house belonged to her," this assertion lacks any factual support in the record and, in any case, does not indicate at what point in time Ebony Peteete eventually may have admitted ownership of the drugs. (Dkt. entry no. 71, Pl. Reply Br. Supp. Mot. Compel Deposition at 1 n.1.)  Thus, this assertion does not materially dispute the fact reported in Samis's Arrest Report that when Samis and other defendants made the decision to arrest the plaintiff and other residents based on a constructive theory of possession of CDS, no one had yet admitted that the drugs belonged to them.

11

Insofar as Samis could have believed that the plaintiff's arrest was based on probable cause, he is also entitled to qualified immunity for the search of the plaintiff's pocketbook incident to that arrest.  See United States v. Goode, 309 Fed.Appx. 651, 653 (3d Cir. 2009).  We conclude that Samis is entitled to summary judgment on the plaintiff's Section 1983 claim as to the alleged Fourth Amendment violations.

The plaintiff's Section 1983 claim further alleges that her arrest resulted in various Fourteenth Amendment violations, including deprivation of her right to privacy, freedom of travel, due process, and equal protection of the laws, as well a violation of the Thirteenth Amendment's guarantee against involuntary servitude.  (Am. Compl. at 8.)  Because these allegations are all apparently predicated on her arrest and subsequent detention, the Court, having found Samis to be entitled to summary judgment as to the alleged Fourth Amendment violations, will also grant summary judgment in favor of Samis on the remainder of the plaintiff's Section 1983 claim.

### III. NJCRA Claim

Count One of the Amended Complaint asserts a "civil rights action" under the NJCRA and New Jersey Constitution.  (Am. Compl. at 7.)  The NJCRA provides a private cause of action to redress, inter alia, violations of the New Jersey Constitution.  N.J.S.A. § 10:6-2(c).

The plaintiff's claim against Samis for violations of the New Jersey Constitution remains pending with respect to the following two provisions:

1. All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty. . . .
   . . .
7. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.

N.J. Const. of 1947, Art. I, ¶¶ 1, 7.  The plaintiff states in Count One that the "illegal, unconstitutional and discriminatory acts of the Defendants constituted acts of a de facto policy to discriminate, use unlawful force, falsely arrest and detain, and illegally search Plaintiff.  The actions of the Defendants . . . also represent a de facto policy to deny Plaintiff her rights to travel, equal protection, contract and privacy."  (Am. Compl. at 7.)

The Court, as discussed above, has determined that Samis is entitled to judgment in his favor with respect to the plaintiff's arrest because he could have reasonably believed that probable cause existed, and therefore Samis is entitled to judgment in his favor on all derivative claims as well.  The plaintiff does not distinguish Count One from Count Two in any way.  Thus, as with

Count Two, we will grant the motion as to Count One insofar as it asserts an illegal arrest, search, and subsequent deprivation of a liberty interest without due process under state law pursuant to Article I, paragraphs 1 and 7 of the New Jersey Constitution. See Awkward v. Willingboro Police Dep't, No. 07-5083, 2010 WL 3906785, at *5 n.7 (D.N.J. Sept. 30, 2010) ("Because the analysis of claims under state constitutional law is similar to the analysis under the Fourth Amendment, no separate analysis will be undertaken for plaintiffs [sic] claims arising under the New Jersey Constitution.").

**IV. Cross Motions for Discovery**

The Court finds that the cross motions to compel the deposition of Samis and to conduct additional discovery should be denied as moot. The plaintiff has not shown that deposing Samis or conducting additional discovery would lead to a different outcome than the Court arrived at with respect to the County Defendants, or lead to evidence that would dispute the factual circumstances indicating the basis for the probable cause determination related in Samis's Arrest Report. It is well-established that "[b]ecause qualified immunity involves immunity from suit rather than a mere defense to liability, a ruling on the issue should take place as early in the proceedings as possible." Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  (Dkt. entry no. 69, Samis Opp'n to Pl. Mot. Compel Deposition at 8.)

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant Samis's motion for judgment in his favor as to the remaining claims against him. The Court will deny the cross motions as moot.

The Court will issue an appropriate order.

　　　s/ Mary L. Cooper　　　
**MARY L. COOPER**
United States District Judge

Dated:    January 31, 2011